```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3    ABC CORPORATION,                )
                                     )
                                     )    Docket No. 23 C 3301
4                  Plaintiffs,       )
                                     )    Chicago, Illinois
5         v.                         )    July 18, 2023
                                     )    11:43 a.m.
6    THE PARTNERSHIPS AND            )
     UNINCORPORATED ASSOCIATIONS     )
7    IDENTIFIED ON SCHEDULE "A,"     )
     et al.,                         )
8                                    )
                   Defendants.       )
9
                   TRANSCRIPT OF PROCEEDINGS -
10        Hearing as to Motion for Preliminary Injunction
              BEFORE THE HONORABLE THOMAS M. DURKIN
11
     APPEARANCES:
12
     For the Plaintiffs:    MR. MATTHEW "CHIP" DE PRETER
13                          MS. SOFIA QUEZADA
                            Aronberg Goldgehn
14                          225 West Washington Street, Suite 2800
                            Chicago, Illinois  60606
15
     For the EARHOME        MR. ANDREW McELLIGOTT
16   Defendants:           Crowell & Moring LLP
                            455 North Cityfront Plaza Drive,
17                          Suite 3600
                            Chicago, Illinois  60611
18

19   For the YIEAR and      MR. BRIAN M. SWIFT
     Macro Camera           AU LLC
20   Defendants:           564 West Randolph Street, 2nd Floor
                            Chicago, Illinois  60661
21

22   Court Reporter:        ELIA E. CARRIÓN, CSR, RPR, CRR, CRC
                            Official Court Reporter
23                          United States District Court
                            219 South Dearborn Street, Room 1432
24                          Chicago, Illinois 60604
                            312.408.7782
25                          Elia_Carrion@ilnd.uscourts.gov
```

1 | APPEARANCES (Continued:)

2

For 18 Defendants:     MR. ROBIN H. CHENG
3 |     MR. TAO LIU
    MR. WEI WANG
4 |     Glacier Law LLP
    41 Madison Avenue, Suite 2529
5 |     New York, New York 10010

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1     (Proceedings heard in open court.)

2          THE CLERK:  This is Case No. 23 CV 3301,

3     ABC Corporation v. The Defendants Identified on Schedule A.

4          May I please ask that the attorneys present on behalf

5     of the plaintiff state their names.

6          THE COURT:  Actually, you can all stay seated as long

7     as you speak into the mic.  So just make sure you do that.

8          MR. DE PRETER:  Good morning, Your Honor.

9     Matthew De Preter on behalf of plaintiff.

10          And with me is...

11          MS. QUEZADA:  Good morning, Your Honor.

12     Sofia Quezada on behalf of the plaintiff.

13          THE COURT:  Good morning.

14          THE CLERK:  And on behalf of defendant -- defendants,

15     please.

16          MR. McELLIGOTT:  Good morning, Your Honor.

17     Andrew McElligott on behalf of the EARHOME defendants.

18          MR. SWIFT:  Good morning, Your Honor.  Brian Swift on

19     behalf of the defendant group, including YIEAR and

20     Macro Camera.

21          MR. CHENG:  Good morning, Your Honor.  He Cheng, with

22     my colleague Tao Liu, and we are representing 18 defendants

23     and two respondents here.

24          THE COURT:  Okay.  Thank you all for being here.

25          Off the record.

1    (Off-the-record discussion.)

2         THE COURT:  Okay.  This case was filed.  I believe a

3    motion for temporary restraining order was granted by me

4    sometime ago, then there was some proceedings that took place

5    last week when I was out of the office and you went before

6    Judge Alonso who was the emergency judge and he took some

7    action.

8         I would like as an initial matter to get some

9    background.  Tell me about the case, tell me what's going on,

10   because I -- I've been chock-full of things to do the last

11   couple of days and I haven't studied this as well as I wanted

12   to before I came out.  So a summary from the plaintiffs' side

13   and from the defense side, even a representative of the

14   defendants would be helpful before we get to the nuts and

15   bolts of the hearing.

16        Go ahead.

17        MR. DE PRETER:  Sure, Your Honor.  This is

18   Matthew De Preter on behalf of plaintiffs.

19        And the case involves a -- my client developed and

20   has been developing over the course of a number of years,

21   various products that are used for cleaning ears.  One of the

22   products is an ear -- it's called an ear spoon and it goes on

23   the end of a -- basically, a camera, and you can put that into

24   your ear canal to end up looking at what it is you're doing

25   while you're trying to clean your ears.

1          THE COURT:  Who uses it, doctors, or can individuals

2   buy this and use it themselves, nonphysicians?

3          MR. DE PRETER:  Nonphysicians can use it.  Doctors

4   could use it, obviously, but it's for just any person sold on

5   Amazon, Walmart.com.  All kinds of sites sell these products.

6   There are a number of -- number of different types, number of

7   different designs that are used, and my client has developed a

8   couple of these particular products, and has innovated to

9   develop a specific design that has a very unique and

10  interesting aesthetic value to it.

11         He filed two patents.  He's actually filed a number

12  of patents, but two patents that are at issue here.  There are

13  two design patents on various designs that he developed.  They

14  exhibit certain ornamental features that overall provide it

15  with a unique aesthetic as compared to all the other ear

16  spoons that are on the market.

17         THE COURT:  Mr. Wang is the inventor, correct?

18         MR. DE PRETER:  That's correct.

19         THE COURT:  Is he the owner of the plaintiff?

20         MR. DE PRETER:  Yes.

21         THE COURT:  Okay.

22         MR. DE PRETER:  One of.

23         THE COURT:  One of the owners.  But okay.

24         MR. DE PRETER:  He has an ownership interest.

25         THE COURT:  All right.  Go ahead.

1     MR. DE PRETER:  And after developing this product, it

2  became very popular and he started having people counterfeit

3  it.  They started knocking off that particular design.  There

4  were other designs in the market that people could've chosen

5  from, but people continued to start to copy his, and that led

6  us to the present case where a number of defendants have been

7  copying his particular designs in violation of the two patents

8  that were issued by The United States Patent and Trademark

9  Office, and we ended up filing a lawsuit, this lawsuit, to

10  enjoin the defendants from copying these designs.

11     All the defendants, to the best of our knowledge and

12  understanding at the time of filing, were foreign

13  corporations.  It's difficult to determine exactly sometimes

14  who defendants are because you don't have to be -- you don't

15  have to verify who you are when you're with Amazon or Walmart

16  or some of the other websites.  And so we did the best we

17  could.  Filed; ended up getting a temporary restraining order

18  served on defendants by electronic means and that brought us

19  to where we are today.

20     THE COURT:  All right.  What's the status of the

21  temporary restraining order?  Do you -- when does it expire?

22     MS. QUEZADA:  Tomorrow, Your Honor.

23     THE COURT:  Okay.  And you got the 14-day extension

24  or does it expire the first --

25     MS. QUEZADA:  Yeah, it's been extended twice now,

1    so...

2              THE COURT:  Okay.  But it's -- all right.  But it

3    expires tomorrow.

4              MS. QUEZADA:  Correct.

5              THE COURT:  All right.  And you have a motion pending

6    for preliminary injunction?

7              MR. DE PRETER:  Correct.

8              THE COURT:  Okay.  Now, on defendants' side, I take

9    it -- well, if it's like a typical Schedule A case, you've got

10   scores and scores of defendants who have not appeared in this

11   case, correct?

12             MR. DE PRETER:  Matthew De Preter.

13             There are a number that have not appeared.  There are

14   a number that have reached out to us to resolve the case,

15   which we have done with some of them.  And then there are a

16   number of -- I think maybe 25 or 30 now that have actually

17   filed appearances in some form.

18             THE COURT:  Okay.  And from defendants' perspective,

19   why don't you tell me what's going on.

20             MR. McELLIGOTT:  Good morning, Your Honor.

21   Andrew McElligott on behalf of defendants.

22             We received notice that there was this -- this TRO

23   that was in place.  We scrambled, for lack of a better word,

24   to get an opposition in as quickly as we could to get

25   appearances on.  I represent nine defendants.  We have a

1   number of other attorneys here representing other groups of

2   defendants that have come forward.  We've identified

3   ourselves, we've identified the affiliates pursuant to

4   Local Rule 3.23.  None of the defendants here feel like they

5   are hiding or trying to escape the jurisdictional reach of

6   this Court.  We are here to litigate this case, and we think

7   that a PI is improper.  We thought a TRO was improper.

8           We were prepared to argue that in front of

9   Judge Alonso, and we did.  We also thought an extension -- a

10  second extension of the TRO was inappropriate under Rule 65,

11  which only contemplates one extension.  And it also states

12  that the Court must issue that extension during the period of

13  the initial TRO which had expired already by two days.  It

14  expired on the 5th when the extension was granted on the 7th.

15          So the defendants feel as if they've already been

16  kept off the market longer than they should be, and we've

17  already come forward with extensive arguments demonstrating

18  how aside from this case, there was a previous case litigated

19  in China with a related Chinese patent in which that patent

20  was found invalid due to functionality.

21          We are asserting that those same issues exist with

22  these patents here.  We also have on sale arguments with

23  respect to these patents.  We also have an expert that's

24  prepared to testify with respect to the functionality

25  arguments.

1    So, Your Honor, we've come to the table, we've

2    identified ourselves, and we have robust responses to

3    plaintiffs' contentions, and we believe today we can

4    demonstrate for you why a PI motion's inappropriate and the

5    TRO should also be lifted even though it expires tomorrow.

6            THE COURT:  Judge Alonso gave the second extension?

7            MR. McELLIGOTT:  Yes, that's correct, Your Honor.

8            THE COURT:  Okay.  All right.  Well, a couple

9    preliminary issues.  Apparently, one of you wanted to call a

10   Mr. Gandy as an expert today.

11           MR. CHENG:  Yes, Your Honor.  I think Mr. Gandy is on

12   line.

13           THE COURT:  Okay.  I don't know that we're going to

14   be having a hearing with witnesses today.  I'm not prepared

15   to -- well, I don't want him hanging on line unnecessarily.

16           MR. CHENG:  Understood.

17           THE COURT:  There's been an objection by plaintiffs

18   saying you had no notice Mr. Gandy was going to be called?

19           MR. DE PRETER:  No, not testifying until --

20           THE COURT:  Or not testifying anyway.

21           MR. DE PRETER:  -- until this morning.  And as part

22   of the briefing schedule that was implemented, Mr. Gandy

23   didn't provide a brief in support of any of the motions that

24   were at issue before Judge Alonso when he entered our briefing

25   schedule in order to reply by the 14th, and so we did not have

1   notice.  Defendants didn't provide us with notice that they

2   intended to call him.  We could've made other arrangements had

3   that been the case.

4          THE COURT:  Okay.  Well, let's go off the record for

5   a minute.

6      (Off-the-record discussion.)

7          THE COURT:  My understanding, then, is there are some

8   entities who have their accounts frozen who are not named as

9   Schedule A defendants.

10          That's the representation of defendant, correct?

11          MR. CHENG:  Yes.

12          THE COURT:  And you're telling me that that may be

13   true, but they are somehow affiliated with named defendants?

14          MR. DE PRETER:  That's our understanding as to how

15   those accounts were frozen.

16          THE COURT:  Okay.  They shouldn't be frozen if

17   they're not a defendant in the case.  They're not a party to a

18   case.  You don't have an order -- if the order is so broad

19   that I entered that allows for the freezing of affiliated

20   entities, that shouldn't happen, I don't believe.  Maybe you

21   can convince me otherwise, but I don't know why a party that

22   hasn't been sued should have their account frozen.

23          Is there a reason?

24          MR. DE PRETER:  Well, it's because they're working in

25   concert with and have had knowledge of the imposition of the

1  TRO.  So under the TRO, it says that if you have knowledge or

2  provided with knowledge of the TRO, and you're selling the

3  product that's frozen as part of the TRO, that product should

4  be frozen -- account should be frozen, so --

5          THE COURT:  Well, account should be frozen or sales

6  of the infringing products should be frozen -- should be

7  prohibited?

8          MR. DE PRETER:  I believe -- sorry.

9          THE COURT:  And maybe you have the language of the

10  TRO there.  I don't have it in front of me.

11          MR. DE PRETER:  Yeah, that's what I'm looking for

12  right now, Your Honor.  I don't have the language of the TRO

13  with me at the present time.

14          THE COURT:  All right.

15          COURT REPORTER:  Can you speak directly into the mic?

16          MR. DE PRETER:  Sorry.

17          I don't have the language of the TRO with me at the

18  present time.

19          THE COURT:  Well, it -- have you spoken to defense

20  counsel about whether or not these accounts of parties that

21  are not named in your Schedule A should have their accounts

22  frozen?

23          MR. DE PRETER:  In some instances yes; in some

24  instances it's difficult to figure out who the account is

25  because Amazon sometimes will freeze an account and they'll --

1  defendant said, so-and-so's account is frozen, which we don't

2  have their name as the same name that defendant has

3  identified, so we have to go back and forth with Amazon.

4  And in some -- so far in some circumstances, we've

5  been able to identify who they are and then release that

6  account so that nobody is improperly frozen.  And in some

7  instances Amazon has trouble figuring out who it is being

8  referred to.

9  THE COURT:  Well, you've got representative --

10  parties that are represented in this courtroom who claim not

11  to be defendants who have accounts frozen.  That would seem to

12  be something where you would meet and confer and discuss

13  whether there ought to be some modification where Amazon or

14  Walmart doesn't freeze their account.  Or come back to me on

15  why it should be frozen.  But I'm having a little trouble

16  putting my arms around the idea of somebody having their

17  account frozen if they're not a named defendant in the case --

18  MR. DE PRETER:  Understood.

19  THE COURT:  -- unless you amend you complaint

20  somehow.

21  What -- when these accounts are frozen, is it more

22  than -- we're talking about money, but are they -- are they

23  prevented from selling anything else on Walmart or on Amazon?

24  In other words, do you have a defendant that may sell

25  100 different items and one of them is this your ear wax

1   removal device, are they prevented from selling the other

2   99 items on their -- on the Walmart or Amazon accounts?

3           MR. McELLIGOTT:  Your Honor, my understanding from my

4   clients is yes, that their account in general is frozen.

5           THE COURT:  Yeah.

6           MR. McELLIGOTT:  So even though they have

7   noninfringing products available for sale, those are also

8   blocked from being sold.

9           THE COURT:  Yeah, and that's my experience.  And I'm

10  not blaming Walmart or Amazon.  They're getting hundreds of

11  these orders because of the proliferation of these kinds of

12  cases, and Walmart's dealing with it as best they can.  But

13  now that we have some representation of defendants, it would

14  seem unfair, and you can tell me otherwise, to freeze -- for

15  Amazon and Walmart or any other platform to freeze a party's

16  ability to sell products that have nothing to do with the one

17  you believe is being infringed.

18          Do you agree with that?

19          MR. DE PRETER:  Yes, I do.  That's fine.  We don't

20  oppose to them being able to sell other products.  Part of the

21  problem is in the past, you know, these cases normally get

22  settled.  What will happen is you have to freeze the entire

23  account because if you don't freeze the entire account, then

24  the defendant can simply just disappear, never show up, all

25  the funds are withdrawn and lost.

1    Since we have defendants that are now named, we don't

2    oppose that the account itself be unfrozen so that other

3    products can be sold, but that shouldn't release the funds

4    that were subject to the infringing sales and they should not

5    be allowed to continue to sell the infringing product.

6         THE COURT:  Well, does anyone on the defense side

7    disagree with the proposition that while this motion's

8    pending, you shouldn't be allowed to sell this product?  We --

9    I mean, I can do a hearing for a week on this.  Practically

10   speaking, I can't, but what I want to do is remove the

11   immediate damage to your clients' ability to sell other

12   products if we put, in effect, a placeholder on your ability

13   to sell these -- these devices.

14        How much do they cost?

15        MR. DE PRETER:  About $30.

16        THE COURT:  All right.

17        MR. DE PRETER:  It depends.

18        THE COURT:  All right.  Well, this is not some -- I

19   expect this is not a huge revenue driver for many of your

20   clients.  And if you agree at least temporarily not to sell

21   those products on these platforms, perhaps we can get an order

22   that allows Walmart and Amazon and any other platform that has

23   your entire sales operation being frozen to be -- allow sales

24   of anything but the infringing product.

25        Would defendants agree to that?

1        MR. McELLIGOTT:  Your Honor, while we think it's a

2   step in the right direction, we think there shouldn't be a PI

3   in place at all.  But if I understand Your Honor correctly,

4   you're speaking to there being a period here where you're

5   deciding the PI motion.

6        THE COURT:  I've got to get briefs, I've got to

7   get -- you have witnesses you want to call in.  I'm going to

8   have to hear arguments.  I'm going to have to consider those

9   arguments and make a decision.  All that takes time.  And it's

10  not going to be decided in the next hour.

11       What I'm offering to you is a way to run your

12  business, as long as you agree not to sell the allegedly

13  infringing products, for which they argue both there's

14  infringement and irreparable harm.  I don't know whether

15  that's true or not.  That's something they may have to prove

16  up, and you're going to have to prove why their patents -- if

17  you believe their patents are invalid or if your products

18  don't infringe, that's something you have to prove.

19       But typically, when I get a case like this, I want to

20  see how you can solve this with the least amount of damage to

21  your clients and the least amount of damage to the plaintiffs.

22  For a $30 product, I don't know how many of these are being

23  sold.

24       Are there millions, hundreds?

25       MR. DE PRETER:  Thousands.

1    THE COURT:  All right.  We're -- go ahead.

2    MS. QUEZADA:  I was just going to say, Your Honor, in

3  some cases the sales are quite high.

4    THE COURT:  Okay.  Define quite high.

5    MS. QUEZADA:  Tens of thousands, maybe hundreds of

6  thousands.

7    THE COURT:  Wow, okay.  Well, I am assuming there is

8  still -- that is more than I thought, but I still think an

9  accommodation or an agreement to allow the sale of other

10  products with the defendants agreeing at this point for the

11  extension of the TRO to prevent just the sale of this product

12  with an expedited briefing schedule and a date where I can

13  have a hearing, and, you know, I -- candidly, I was not

14  reading these design patents when I was out of town last week.

15  So I'll fully admit to that.

16    But that to me seems like the most organized way to

17  do that.  It protects the plaintiffs' right to not have a

18  product they allege is infringing being sold, protects your

19  right to go out and sell everything else on these accounts.

20  If you don't like it and you don't think that's acceptable,

21  I'll start the preliminary injunction hearing today, but it's

22  not going to complete today, and you're not going to be able

23  to sell anything in the meantime until I make a decision.

24    I don't know how that advantages your clients.  And

25  from the plaintiffs' side, you've got defendants that aren't

1    going to disappear.  They're represented by counsel.  This is

2    not the case in -- you have in many Schedule A cases where you

3    have defendants that are a website or domain name and then

4    they disappear and then they pop up somewhere else selling the

5    same counterfeit product.

6            So let's go off the record again.

7      (Off-the-record discussion.)

8            THE COURT:  Let's call the case again.

9            THE CLERK:  All right.  So this is Case

10   No. 23 CV 3301, ABC Corporation v. The Defendants Identified

11   on Schedule A.

12           THE COURT:  All right.  No need to identify

13   yourselves for the record again.  All the attorneys who were

14   here at the earlier session are here now.

15           Can you report on what the progress of your

16   discussions are?  First, from plaintiff.

17           MR. DE PRETER:  Yes, Your Honor.  We have talked it

18   over and believe that we have a path forward while the

19   preliminary injunction is decided.  So the parties agreed that

20   the preliminary injunction against all nonappearing defendants

21   should be entered as is.

22           As to the appearing defendants, with the exception of

23   the defendants that are identified in Docket Entry 50 -- we'll

24   address in a minute -- the preliminary injunction hearing

25   should move forward and briefing on that should be -- a

1    schedule for briefing on that should be implemented.

2        In the interim, the accounts for those defendants

3    will be unfrozen.  And those defendants will post a bond to

4    the court of $100,000.  That -- those funds can be directly

5    transferred by Amazon if the defendants choose to have it

6    transferred that way.  And -- and those platforms will be

7    authorized to sell the accused products during the time period

8    in which the Court determines the preliminary injunction.

9        As to Docket Entry 50, those defendants' assets will

10   remain frozen at Amazon or their respective platform.  The

11   injunction against selling infringing products will continue,

12   but the stores will then be released to sell all other

13   noninfringing products.

14       And as to any third-party -- any party that wasn't

15   identified on Schedule A, plaintiffs will make sure --

16   progress towards releasing those defendants.  They would not

17   be subject to any preliminary injunction or temporary

18   restraining order going forward.

19       THE COURT:  All right.  Does defense agree with this?

20       MR. McELLIGOTT:  The defense agrees, Your Honor, with

21   just one clarification on the $100,000, just to make it clear

22   that that would be for the group of defendants here, other

23   than those identified in Docket 50.

24       So it wouldn't be 100,000 per defendant.  It would be

25   50,000 from the defendants that I represent and then 50,000

1    from other defense counsel.

2          THE COURT:  Plaintiff agree?

3          MR. DE PRETER:  Plaintiffs do agree.  And to just

4    further the discussion, we've proposed having a proposed order

5    that would address this, and the parties will work on a

6    proposed order to get it over to Your Honor.

7          THE COURT:  That's fine.  And you should also

8    address -- well, that's fine.  I will enter the preliminary

9    injunction as to nonappearing defendants.  You should have a

10   proposed order on that submitted that excludes all the

11   defendants represented that are now the subject of another

12   order you're going to present to me.

13         Have you talked about the steps going forward?  How

14   do you want to proceed; by way of briefing, setting a hearing,

15   both, or is that something you're still discussing?

16         MR. DE PRETER:  We hadn't discussed that.  I think --

17         THE COURT:  You had or had not?

18         MR. DE PRETER:  We had not, Your Honor.

19         THE COURT:  Okay.  Well, go ahead, I interrupted you;

20   finish.

21         MR. DE PRETER:  I think a hearing would be

22   appropriate.  It sounds like the other side wants to have live

23   testimony from their witness.  Perhaps we can discuss exactly

24   if a hearing will be necessary, if we should just proceed on

25   briefs.  I think that a further brief from plaintiffs would be

1    appropriate in view of the now filed expert report.

2          THE COURT:  Yeah, I -- I'm indifferent to how you

3    want to proceed on that, however you best want to brief this

4    in front of me, or whether it's responding to an

5    expert report, whether it's further briefing.  Reach an

6    agreement on the briefing schedule.  If you can't reach an

7    agreement, notify my courtroom deputy of your disagreement and

8    I'll resolve it.

9          If you -- parties jointly -- or not jointly.  If one

10   side or the other believes a live hearing is necessary, then I

11   will -- contact my courtroom deputy, we'll set a date where I

12   can hear testimony.  Make sure you include with that request

13   the length of time you think it'll take so I can -- if it's

14   going to take a day, I need to have a free day.  If it's going

15   to take some time less than that, then it allows me to

16   schedule other matters at the same time.

17         But I'll expect two proposed orders, one on the

18   preliminary injunction that's being granted without any

19   response from defendants who have failed to appear and failed

20   to object to it, and then a proposed order relating to those

21   defendants that have appeared pursuant to -- under the various

22   conditions you've set forth.

23         Please act promptly on releasing -- on contacting the

24   platforms to release the monies that are frozen of people that

25   are not required to be -- have their monies frozen by the

1  order I have, which was not -- well, the order is -- I've

2  reviewed it, and it's clear that some things should have been

3  restricted, some things should not, and make sure you account

4  for the people that are -- shouldn't have their accounts

5  frozen to do that promptly with the platforms.

6          MR. DE PRETER:  Understood, Your Honor.  We may have

7  three orders just because of -- we have a section of --

8          THE COURT:  That's right.

9          MR. DE PRETER:  -- a few defendants, but --

10          THE COURT:  Yeah, two or three.  Just note on the top

11  they're agreed, make sure both sides have had a chance to look

12  it over, you're all comfortable with the language, and I'll

13  enter it if it's agreed.

14          MR. DE PRETER:  Okay.  Thank you, Your Honor.

15          THE COURT:  Anything else we ought to discuss today?

16  First, plaintiff.

17          MR. DE PRETER:  No, not from plaintiff, Your Honor.

18          THE COURT:  Defendants?

19          MR. CHENG:  Just regarding the in-person hearing

20  date, because we have some prearranged vacations, but that can

21  be discussed with the courtroom deputy.

22          THE COURT:  Yeah.  I mean, you know what restrictions

23  you have; you know what restrictions you don't have.

24          MR. CHENG:  Yeah.

25          THE COURT:  If there's an urgency into getting

1    these -- getting this hearing done, I'll work around your

2    vacations.  No one should have to sacrifice a vacation unless

3    it's a criminal matter with a person sitting in jail.

4          MR. CHENG:  Sure.

5          THE COURT:  And so if -- do it that accommodates both

6    your professional and personal schedules, and I'll work with

7    you.  I should tell you, though, starting September 14th, I'll

8    be on trial through mid-December, four days a week every week.

9    So if you're going to look for a full day -- and my Fridays

10   are chock-full of sentencings and criminal pleas.  So if

11   you're going to look for a full day, try and make it before

12   September 14th.  Maybe you anticipated a much sooner hearing,

13   that's fine --

14         MR. CHENG:  Much -- much sooner is better.

15         THE COURT:  -- but, you know, be cognizant of your

16   own schedules.  I'm not going to interfere with that if

17   you've -- you reach one that works for all of you and it works

18   for us, we'll do it then.

19         MR. CHENG:  Sure thing, Your Honor --

20         THE COURT:  Okay.

21         MR. CHENG:  -- we'll work with opposing counsel and

22   find what works for everyone.

23         THE COURT:  Well, thank you all for talking, which is

24   often the best way to at least reach some accommodation going

25   forward and you'll get your day in court when you ask for it.

1    MR. CHENG: Thank you, Your Honor.

2    THE COURT: Thank you all.

3    MR. DE PRETER: Thank you, Your Honor.

4    MS. QUEZADA: Thank you, Your Honor.

5    THE COURT: Okay.

6  (Proceedings concluded at 1:48 p.m.)

7        CERTIFICATE

8  I certify that the foregoing is a correct transcript from

9 the record of proceedings in the above-entitled matter.

10 */s/ Elia E. Carrión*    *9th day of August, 2023*

11 *Elia E. Carrión*       *Date*
  *Official Court Reporter*

12

13

14

15

16

17

18

19

20

21

22

23

24

25